First case is People of the State of Illinois v. Susan Windhorst and is it Mr. Malamud? Exactly, Your Honor. When you're ready, please proceed. Thank you, Your Honor. Good morning. I may please the court. My name is Elbeth Malamud. I'm here today in the Illinois Attorney General's Office on behalf of the appellants of People of the State of Illinois. Below, the circuit court granted the defendant's petition to rescind the summer suspension of her driver's license. But for two reasons, each of which is independently sufficient, this court should reverse. First, it was the defendant's burden to come forward with a prima facie case to support the proposition that she was not under the influence of alcohol, or that there were reasonable grounds to believe that she was under the influence of alcohol. This she did not do, and the circuit court should have denied the petition on that basis alone. Second, the facts, as credited by the circuit court and as pointed out by the video, clearly demonstrated that Officer McNeely had reasonable grounds to believe that the defendant was under the influence of alcohol. And I'll point out here first, and again, that the facts, as we did in our brief, that the facts are not in dispute here. This is not a factual question. It's simply addressing the facts as credited by the circuit court and as borne out by the video. And the only question is the legal implication of those facts. And that is a question this court reviews to know. So turning first to the prima facie case, in a summary suspension hearing, it is the defendant's burden to come forward with a prima facie case that she was not under the influence of alcohol, or that Officer McNeely had no reasonable grounds to believe that she was under the influence of alcohol. She came forward with no such evidence. Instead, what the defendant attempted to do was provide possible alternative innocent explanations, or to suggest that there could be alternative explanations for some of the indicators of intoxication, of the influence of alcohol. But asserting that there could be some alternative explanation is not an affirmative piece of evidence to show that there wasn't the influence of alcohol. So for instance, the defendant stumbled when she got out of the car. She asserted the possibility that it was her footwear. But if she stumbled, even if she had stumbled because of her footwear and not because of the influence of alcohol, that would not be evidence that she was. Does she have to offer proof that she was not under the influence of alcohol, or is the element that she has to offer proof of is that the officer didn't have reasonable grounds to believe that she was under the influence of alcohol? I understand that's maybe a fine distinction, but that's really what we're talking about, isn't it? That's correct, exactly, Your Honor. She has to come forward, the defendant has to come forward with evidence that she was not under the influence of alcohol. That she was not under. She's got. Excuse me, I apologize. I'm sorry to interrupt also. That the officer did not have reasonable grounds to believe that she was under the influence of alcohol. And of course, she can do that partially by proving that she wasn't under the influence of alcohol. But she doesn't have to offer proof that she was not under the influence of alcohol, does she? No, Your Honor. But she does have to show that she has to come forward with affirmative evidence that there were not reasonable grounds to believe that she was under the influence of alcohol. Okay, all right. Go ahead. So if, for instance, there was some alternative explanation for one of the indicators of alcohol, her red eyes. She questioned Officer McNeely regarding the possibility of some alternative explanation. There was no alternative explanation given. There was no explanation given that her eyes were red indeed because of perhaps an alcoholic or something. There was simply the assertion that there could be some alternative explanation. But that isn't sufficient. That is simply a possible explanation. There's no affirmative evidence either that that was the case. There's certainly no evidence that Officer McNeely had any reason to believe that that was the case. It does not change the fact that red, glassy eyes do raise the suspicion of the influence of alcohol and defeat the presence of the influence of alcohol. And so without coming forward with some affirmative evidence that the petition should have been denied on that basis, the closest the petitioner reaches is the assertion that she obeyed some of the driving laws. She makes the assertion that she was able to, even when she made, so the officer observed her making wide turns and going into the opposing lane of traffic. She makes the assertion that even when doing so, she did so in a smooth manner. But first of all, but a certain, it would be, if the threshold is that a driver is able to not break every single law, every single traffic violation over a two or three or four block span, that is no threshold at all. That would be, any driver under any state can follow some of the laws, some of the time. And in here, within a few block span, the defendant stopped at stop signs that didn't exist. She was driving without her headlights. She made wide turns into opposing traffic. That kind of driving over such a short time cannot be evidence that alcohol was not present. So she didn't come forward with a crime offense case that the circuit court should have denied the petition on that basis, and this court should reverse on that basis alone. And there's a second independent basis on which this court also may reverse. And that is that the facts, as they came out, as Officer McNeely testified to, and as they were credited by the court, again, this is not, there was no contrary testimony. It was simply the testimony of Officer McNeely and the victim. And so the facts are evidence. And the only question is the legal implication of those facts, whether it was reasonable grounds for Officer McNeely to believe that the defendant was under the influence of alcohol. Now, reasonable grounds in this case have been found akin to a probable cause determination. To find probable cause, an officer does not need to have facts that suggest that it is more likely true than false that a crime has been committed. There only needs to be a reasonable probability. In this case, there were reasonable grounds. There were more than enough facts to support reasonable grounds. There was the defendant's physical condition, her red glassy eyes, the odor of alcohol, albeit faint, the fact that the defendant swayed in her seat, her slurred speech, she staggered when she tried to exit the vehicle. There were her actions, the fact that when asked to look for her license, she instead searched for her insurance card. And then didn't see the insurance card, even though it was sitting on top of her lap. There was her inability to respond appropriately to complete the officer's sentences when asked questions by the police officer. And there was also the admission that she had way too much to drink. The officer asked her, or suggested that she had had way too much to drink. And the defendant admitted that was probably true. The defendant now seeks to undermine the probative value of her admission as she relies on the Boomer case to do so. But Boomer is distinguishable, and indeed has been distinguished. In Boomer, the driver in that case had suffered an injury, and so could not speak. And so the officer asked the driver if he had been drinking, and he did not. If he had something to drink, if he had consumed alcohol. Now, there was already the odor of alcohol in his breath. And the appellate court found that the admission that there was consumption of some alcohol was duplicative. It was not enough. So in Boomer, all there was was the admission that there was consumption of some alcohol. There were no other indicators driving another influence. Here, Boomer is distinguishable for two reasons. First, here there was not just the admission that the defendant drank some alcohol. There was the admission that she drank probably way too much alcohol. So it's not to be reckoned with. Second, there were all the other indicators of the influence of alcohol. Again, the glassy red eyes, the odor, the slow speech, and so on. And cases such as Cortez and Lurz have specifically distinguished Boomer as a case involving just the admission that there was some alcohol consumption, but nothing else. So there were plenty of reasons for Officer McNeely to believe that there was an influence of alcohol. Did Boomer involve no field sobriety test also? Your Honor, in Boomer, the defendant was seriously injured. There were no field sobriety tests. That's correct. There was, I don't believe that the driver in that case could do anything except believe, maybe nod, or severe injury. So there was no field sobriety test. Now, the circuit court and defendant relied in this case also on the fact that there were no field sobriety tests. But they can point to nothing to suggest that there needs to be a field sobriety test. There's no requirement in Illinois law that field sobriety tests be conducted. As long as there are reasonable grounds at the point of arrest to believe that there was an influence of alcohol, then there is simply no requirement of field sobriety tests. And so the absence of those here, or before the arrest, is not an indicator that there were not reasonable grounds. Field sobriety tests might have added further reason to believe that she was under the influence of alcohol. But there was plenty of basis to believe that there was an influence of alcohol already. The other basis on which the defendant and the circuit court relied is when Officer McNeely, quote-unquote, decided to arrest the defendant. This is raised by the circuit court as matter of significance and was repeated by the defendant that Officer McNeely decided to call the tow truck and decided upon the arrest before the actual arrest was made. But did the circuit court make that factual finding? Yes, Your Honor. The circuit court made the factual finding. And we have to defer to those factual findings, right? In other words, unless that finding is against the manifest weight of the evidence, we defer to the trial court's findings. Well, that's right, Your Honor. And why would we, why would it be, why would the opposite conclusion be clearly apparent that when he ordered the tow truck, he must have been planning on doing something, right? Well, Your Honor, there are two factual findings. One is the point of decision. So Officer McNeely, let us assume that the circuit court decided, that the officer decided to arrest the defendant at that point. There's a second factual determination of when the actual arrest occurred. Now, the circuit court made a factual determination that the actual arrest did not occur until the defendant got out of the vehicle. That's not up for dispute. Defendants, for instance, agreed in her brief on page 7 that the circuit court determined that, quote, defendant's arrest occurred at the point she was placed in handcuffs. If you look at the circuit court's order, you can look at page 2 of our appendix, or C24 of the record, that the arrest occurred, in the circuit court's order, the arrest occurred when the defendant exited the car and was placed in handcuffs. If you look at page 163 or 168 of the record, you can see in the transcript that the circuit court found that the arrest itself occurred at some point when she got out of the vehicle and was placed in handcuffs. It's not 100% clear whether the circuit court found that it was the moment of the handcuff when the handcuffs were placed on the defendant or the moment of when the officer told her she was being placed in handcuffs. But it's at that point when she exits the vehicle. So we have two factual findings, and those factual findings must be respected. But the point is that the legal implication of the decision to make the arrest is irrelevant. All that matters is when the actual arrest was made. It's an objective test. It's not a subjective test. The subjective view of the officer is irrelevant. Indeed, if the officer believes that there's never an arrest, we certainly don't hold that that's the case, just because the officer believed so. And indeed, even if the officer believed that he had placed the defendant under arrest beforehand, that would not mean that an arrest had occurred. It's an objective test. And the factual finding, as made by the circuit court and as conceded by the defendant, is that the arrest occurred when she exited the vehicle. So the question is, at that point, at the point where she exited the vehicle, was there enough for the officer to find reasonable grounds to believe? Did the officer have reasonable grounds at that point, at the point she exited the vehicle, when he decided to make an arrest? It's irrelevant, because he then went on to ask questions and get evidence. She made even further statements regarding her alcohol consumption. And so all those must be considered. And indeed, the circuit court did consider this. The circuit court simply found that there needed to be further sobriety tests. There's no such requirement here. Now, turning just quickly to the alternative explanations that the defendant has come forward with. Essentially, she has tried to undermine bits and pieces of the evidence. She states that she admitted to having way too much to drink, simply, or that she was likely just acquiescing to authority. There's no evidence in the record that that's the case. And in any event, all these alternative explanations are essentially irrelevant to the probable cause question. Even if it turns out later that there's some innocent explanation, it does not change the fact that, at that time, these were bases for Officer McNeely to believe that the defendant was under the influence of alcohol. And so the fact that the maids found out that she had been wearing footwear, which caused her to stagger, although, of course, again, there's no evidence that she was wearing footwear, which made it impossible to get out of the vehicle without staggering whatsoever. But even if there were later some innocent explanations provided, that does not change the fact that, at that time, there were reasonable grounds for Officer McNeely to believe that she was under the influence of alcohol. And comparing these to past precedents of the appellate courts and the Illinois Supreme Court show that this is evidence. Now, the defendant attempts to say that each case is specific as to its facts. That's, of course, true in a totality of circumstances type analysis. But we still must look towards other cases to see how the facts here compare. And if you look at cases such as Ware and Cortez, the facts here clearly align with those and, indeed, are stronger than cases in which probable cause has been found. So, again, the defendant did not come forward with a primatization case that she was – that there were not reasonable grounds to believe that she was under the influence of alcohol. That alone is a basis for reversal. And, second, another basis is that the legal implications of the facts credited by the circuit court show that there were reasonable grounds for Officer McNeely to believe that the defendant was under the influence of alcohol. So, unless there are other questions, I will save the rest of my time for questions. Thank you. Ms. Haslund? May it please the Court? I'm Heather Haslund with the Roberts Law Firm. I'm appearing on behalf of the appellee, Susan Winforce. In response, Your Honors, as far as the State's argument regarding whether or not my client came forward with a prima facie case that there was no probable cause for the officer to believe at the time that she was under the influence of alcohol, I clearly disagree with the State on that point. And as far as the evidence that the defendant is required to come forward with, Judge, I don't believe that my client has to present an affirmative fact on each issue herself in order to bring out the basis of whether or not there's probable cause in this case. I believe that the officer is the individual who's determining whether or not he believes he has probable cause based on his observations. For my client to stand up and say in court, after the fact, I wasn't intoxicated, I don't really know how probative that would be to his decision at the time regarding probable cause. Your Honor, to speak to the State's example as to red bloodshot eyes and my client not putting forth evidence that she was not intoxicated and therefore that's not an indicator of intoxication, there was discussion with the officer in testimony as to the credibility and the weight of what that indicator may show to the trial judge as to intoxication. And the officer's own testimony indicated that he was trained by his training through the National Highway Traffic Safety Association as to determining whether or not someone's intoxicated. He indicated that he was trained that you could not determine that based on the look of eyes alone. Now, I agree that a probable cause determination is a totality of the circumstances factual finding or facts that lead to a legal finding. Based on that, I believe that each indicator has issues. When you get to the legal conclusion, you can only get there by using weight and credibility findings throughout that determination. And I believe that the judge in this case did that. I believe that presenting evidence through the officer with the officer often showing that the evidence that he's pointing to may not have the weight that would rise to the standard of probable cause is presenting prima facie evidence that their probable cause was lacking. I will turn to as far as the standard. The standard here is whether or not the judge was incorrect. It's a manifest weight of the evidence determination as to whether he was correct in believing that the officer did not or a reasonably prudent person in the officer's position with the knowledge he possessed at the time of the arrest. Can I interrupt you one second? Yes. That manifest weight of evidence standard applies to findings of fact. I agree. And then we go to the legal conclusion, which is denominal. That is correct. What facts are – state indicates the facts are not in dispute. What facts do you believe are in dispute that we would apply the manifest weight of evidence standard to? Judge, I believe that the facts that you would apply the – I mean every fact that is in evidence, the officer's observation of bloodshot glassy eyes. I don't dispute that that's a fact. But I do believe that a weight of the evidence determination goes into determining whether or not that in the totality with other facts rises to the level of probable cause. So I understand that there's manifest weight and then there is de novo review of a legal determination. But I do – what I'm pointing out is there is factual and weight and credibility issues inherent in getting to the point of a legal determination here. And I just believe that it's important to flush that out. As far as the stages of alcohol detection, there are three – vehicle in motion, contact with the defendant, and field sobriety test. In this case, we only have two of those observations of the officer. As far as driving, there's about two and a half blocks of driving that the judge had the opportunity to see on the video and that the officer described. There's both on a scale of not perfect driving to terrible driving. I would say terrible driving is you're no longer on the road, there's an accident. Perfect driving is obviously no traffic violation whatsoever. And I would say that this – I would agree the fact is not in dispute. This isn't perfect driving. The client did not have on her lights. It was a well-lit area and that was brought out in the facts in the case. Just take that right there. The standard of review is really critical to us, as you well know. What standard of review do we use? We see a video. I guess the driving is not in dispute. So do we apply the standard to determine whether it was good or bad driving? Judge, as far as the standard of reviewing the evidence, what I believe is that you have to give some weight or some deference to the judge's determination of the weight and credibility of that evidence. As he's in Metropolis, he's aware of this intersection. He knows where the cars are here. He knows whether or not there's other traffic. I mean, he pointed out where there's a stop sign, where there's not a stop sign. So I think to an extent, when you're reviewing a video, he has some knowledge that this court doesn't. Okay, thank you. As to the driving, in that two-and-a-half-block period, there was also instances of good driving. She did use her signal appropriately. She did drive cautiously. She stopped at a complete stop at a stop sign. She was therefore obeying traffic regulations, which are also factors of not being intoxicated. So in my case, there are issues that may point to alcohol being present. There are issues that may point to a lack of intoxication, and I believe that the judge reviewed each of those. He did indicate there were wide turns. These are roads in which there aren't lines. And there are also cars parked diagonally along the right-hand side so that you would need to sweep out to avoid those vehicles. As far as the officer's observation with my client, the court made note of, and I think that it is important, that within 30 seconds of the stop, the officer called the tow truck. At this point, he says in testimony that he's made a decision to arrest for DUI. The judge did, in his order, indicate that he believes that the arrest occurred altogether and that the officer determined that he was going to make his arrest at the time he called the tow truck, that he indicated to Ms. Wendhorst before she was asked to exit the car that she would be placed under arrest and that she was placed in handcuffs. He said that he believed that this was all wrapped up together and indicated the time of arrest. And I would note that the officer testified somewhat lengthily about his interaction with the defendant, Ms. Wendhorst, during the time period that he's at the vehicle before he calls the tow truck, that he needed to speed that up, that he had to reach into the car because she was taking too long. She seemed confused. This was an incident that he needed to speed up. It was nine seconds from the time that he walked up to the vehicle and asked for her license and the time that he's calling for a tow truck and has made his decision for arrest. And I believe the court thought that that was important that he noted in his order. As far as indicators of impairment, you know, whether or not... Do you agree with the position that there's no requirement to conduct a field sobriety test on the scene? It's undisputed in the law that there are numerous cases throughout Illinois where field sobriety tests have not been done and there's been findings of guilt based on that and there's been findings of probable cause based on that. I think that each case is individual, and this is a case where the judge determined, based on all of the evidence present here, he believed that the officer was reasonable in believing at the time that there may be alcohol present but that it's not illegal to drive with alcohol present in your system in Illinois. And he did not believe that, based on what the officer had the opportunity to observe in the brief observation of my client, that he had enough at that point or a reasonable person at that point would have enough to believe that she was intoxicated and had therefore committed a crime of driving under the influence of alcohol. He does mention that he believes field sobriety tests should have been done, but I think that's a reasonable thing to mention when you believe you may have reason to ask her to step out of the car to investigate further. I mean, he used that specific language. He did. He should have you conduct a field sobriety test. He did, and I believe what he was saying was that he believes he has a basis to believe alcohol is present, but he also believes that investigation needs to be further done to determine whether or not she's intoxicated based on that consumption. And that's the purpose of field sobriety tests. That's why they were created, to say that they're never necessary would do away with a lot of research and a lot of funds, a big tool that officers use to determine intoxication. While I agree and I can't dispute that there are some cases where they're not required or they're not necessary, I think the judge has made a factual determination in this case that based on his observations, he believed that were she to have failed those tests, possibly the judge in this case would have been over the moon, but at the point that he has made his determination to arrest and has arrested her, he's not there yet. So I think that that's the issue with the field sobriety testing, and the judge believes that they were needed in this particular case. As far as the feint, I mean, there are issues that the state points to that indicate impairment, but again, I think that's where we're getting into the review standard of weight of the evidence. How much weight did the judge give the factor that there's a feint odor of alcohol present? An odor of alcohol has been found by Illinois courts to show that consumption may occur, but that doesn't indicate necessarily that intoxication is present. The same with eyes, the same with speech. So I think that that's what I'm getting to when I'm discussing weight. As far as the statement that the state refers to, I will point out first that the statement has come out now, but at the time of the hearing where I was present, the officer testified in direct examination that there was no admission to drinking by my client, Ms. Wentworth. We watched the video, and the video was reviewed in court. The officer had an opportunity to watch that with the judge, myself, and Mr. Ryback. I did not hear that statement in the court. I can't speak to what the judge or what Mr. Ryback heard in the court. However, Mr. Ryback did not mention that statement again during the hearing when we were there for the hearing, and additionally, the officer again was asked in cross-examination by Mr. Ryback and stated again affirmatively that there was no admission to drinking. So if we're looking at a probable cause determination based on what the officer knew at the time, he stated twice in the hearing that he heard no admission to drinking whatsoever. He didn't hear her say probably. That never came out until a motion to reconsider. And again, I think if you put your ear up to the speaker, you may hear that word probably, and that's why it's in my facts. I can't deny that it's there on the video, but I will say that that was not brought out in the trial court and was certainly not focused on in the trial court. That said, I do believe that someone can make a statement in response to a question. So let me make sure I understand what you're saying. The officer testified, in effect, that he did not hear her make that statement. He wasn't asked, did you hear her say probably? Because no one ever said that. But he testified that she made no admission to having been drinking. He did. So what you're saying is he could not have then, in his probable cause determination, considered her statement probably that she'd had too much to drink. That's what I'm saying. I believe he was asked twice, both before reviewing the video and direct exam. He said there was no admission to drinking, that she was nonresponsive to that question. He was then given the opportunity and afforded the opportunity to review the video with the rest of the courtroom. He was asked again by Mr. Ryback, the State's Special Prosecutor, whether or not there was any admission to drinking prior to the arrest, and he again indicated no, there was not. So the fact that he goes through the video with the State later and hears that, I don't think is necessarily something that goes towards what his probable cause was at the time or what was his knowledge at the time that he arrested my client. That's that. I did deal with that briefly in my brief, that if an officer says to someone, you probably had too much to drive when they're pulled over and they're being arrested, I think at that point someone is intent on being cooperative. They may say yes, but I don't believe that they have the ability to know what their blood alcohol concentration is at that point or that necessarily that statement rises to the level of probable cause, and the judge in this matter I don't think believed that either. Or he may have believed that the officer's two statements that there were no admissions to drinking may have meant that that was not something that went into the determination of probable cause. It certainly was testified to by the officer as one of his reasons for coming to the decision to arrest. As far as the incident upon getting out of the car, the officer did testify that my client stumbled, but it was also the officer's testimony, and that's something that came out with the state's witness, that my client indicated she had an issue with her shoes, that he indicated to her that she could take those off. I think that's the state's witness giving credibility to the fact that there may have been an issue there with her shoes and that he allowed her to remove them, so he must have believed there may have been a problem with those. So I don't believe that Ms. Windhorse has done the affirmative duty to come forward and say it was my shoes. I think the officer's addressed that. So based on all of this, I think that it is clear that my client did make a prima facie case for it, that there was a probable cause. I think that the way to do that is to put forward the testimony of the officer for him to discuss the facts that he considered in coming forward or coming to his decision that there was probable cause to arrest, and I believe that was made. The state did not present any evidence post that finding that they did make a motion for directive verdict. They did not present any evidence after that. So they did not attempt to controvert that at all after that point, and I believe that the judge at the trial court level was correct and appropriate in coming to the determination that there was a probable cause in this case. Unless there are any questions. Thank you. Rebuttal. Good morning again, and I'll just try to reach three or four quick points on rebuttal. First, with respect to the credibility issue, there's been some discussion about whether there is a credibility issue here. The credibility of Officer McNeely was not in question by the circuit court. The circuit court found Officer McNeely credible. He credited every piece of this testimony. So there's certainly, I just can't really see what credibility issue there might be here. There's another question with respect to the standard overview. Again, we assert that the facts have been credited by the court and are apparent from the video. There's some question as to what standard overview is appropriate for reviewing the video. First, I'd like to point out that although the defendant would like to question the relevance of the statement that she probably had too much to drink, which is clearly apparent in the video, she attempts to use the video to demonstrate her good driving. She says that she can see the smooth line of turns. You can see various other indications of good driving. So it is not simply the statement lying on the video. Now, it's a good question what standard overview would apply to a video. I would assert that looking at a video, there's not the same credibility issues. There's not the same presence of a witness that there is in this testimony. And so the actual deference that should be given to determination of facts based on videos, they're probably less because there aren't the same issues that there would be with a witness testimony. Well, we provide, we give deference to the trial court on factual findings. It's only when factual findings are subject to only one reasonable inference that we use de novo review, right? So the video shows she stumbled. That's an undisputed fact. But the issue is why did she stumble? And that might be susceptible to more than one inference. It might be because she had too much to drink. It might be because she was wearing high heels. And we have to defer to that inference that the trial judge finds. Agreed? That I agree completely, Your Honor. In this case, for instance. Oh, I'm sorry. No, no, I'm just, you know, I don't think we apply any different standard review to a videotape, do we? We apply the same standard to edit as any other evidence. Sure, Your Honor. I would agree with that in the sense that the inferences, the actual way how that is the same. The question would be regarding the statement. Now, there was some testimony by the officer that the defendant was nonresponsive when asked about her alcohol intake. There's two issues there. One is she was actually asked right at the outset, the officer, Officer McNeely asked right at the beginning, how much did you have to drink tonight, ma'am? And the defendant responded, sort of trailed off. So when asked in court whether the defendant had, what the defendant had said about alcohol consumption, the officer might have been referring to that as an exchange as opposed to the later statement where he simply stated he had too much to drink, and she agreed. But now there's no question on the video. I wasn't at the hearing. I don't know what could be heard at the hearing. But there's no question. The video is in evidence. I'm going to put it in evidence. There's no question listening to it in the normal volume that the officer states you probably had way, way too much to drink. The defendant replies, probably. That's an undisputed fact. Any contrary finding would be against the Manifest Waiver of the Event Statement with respect to whether that exchange occurred. Now, with respect to the significance of that statement, there might be a deference accorded to the circuit court. But in this case, there's no indication that the circuit court discredited that statement. There's no indication that the circuit court found that it was simply acquiescence to authority. There's no indication that that statement meant anything other than what it means to face facts. Turning briefly to the issue of the time of arrest, there's some statements by the circuit court regarding the time of arrest being altogether. But what is clear, if you look at the circuit court, this is on page 163. The circuit court is discussing the time of arrest, and the court states, you know, when is the quote-unquote actual putting under arrest? Is it by telling someone they're being placed under arrest? Is it by telling them to get out of the car? Is it by placing handcuffs on them? I think it's all kind of together. So the all kind of together language is just in respect to the few seconds, whether it's when he tells her that she's under arrest, whether it's when he places the handcuffs on her. It's not, there's no finding that the time of arrest is with respect to, is at the time where he caused the torture. I see my time is up. I ran out of time, but we would ask the court to reverse the judgment of the circuit court. Thank you. Thanks to both of you for your briefs and arguments this morning, and we'll take the matter under advisement and try to get you a decision on the earliest possible date. Thank you. Next case is Corrine Hawkins v. Nolik and National Key Bank. Mr. Larson. Sir, when you're ready, please proceed. May it please the court. Counsel.